**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **WILLIAM A. MALONE, # B-52858,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16-cv-200-SMY** |
| | ) | |
| **C/O FRITTS,** | ) | |
| **and UNKNOWN PARTY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is before the Court for a status review. Plaintiff is incarcerated at Pinckneyville Correctional Center ("Pinckneyville"). On August 29, 2016 (Doc. 9), Plaintiff's original *pro se* Complaint in this civil rights action was dismissed and several claims were severed, resulting in eight new separate actions. The only claim remaining in the present action is Count 1, summarized by the Court as follows:

> **Count 1:** Retaliation claims against Defendant Fritts, for taking unspecified action on 1/12/14 and 2/13/14 against Plaintiff because Plaintiff filed complaints; and against unidentified Defendants for planting contraband in Plaintiff's cell on 5/13/14.

Plaintiff was ordered to submit an amended complaint, limited to the claims in Count 1 only, no later than October 3, 2016, in order to proceed with these retaliation claims. Plaintiff was warned that if the amended complaint still failed to state a claim, or if he failed to submit an amended complaint, the entire case would be dismissed with prejudice and the dismissal would count as a strike pursuant to 28 U.S.C. § 1915(g) (Doc. 9, pp. 11, 17-18; Doc. 11).

On September 29, 2016, Plaintiff submitted a 26-page "Motion to File First Amended

Complaint" (Doc. 12).  However, he did not submit a separate amended complaint.  In keeping with the Court's obligation to liberally construe documents filed by *pro se* plaintiffs, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996), the Court will consider whether the motion itself may be construed as the First Amended Complaint.

## The Motion to File First Amended Complaint (Doc. 12)

Plaintiff begins by describing a grievance he wrote on September 29, 2011 to complain about another inmate (Hernandez) who had threatened his life and punched him (Doc. 12, pp. 1-3).  C/O Bryant failed to take Plaintiff to health care or to write an incident report.  The inmate had been moved to another housing area, but recently was placed back on Plaintiff's wing.  C/O Bryant and C/O Ebbers failed to take any steps to protect Plaintiff.  Plaintiff then requests the Court to order his transfer to Dixon Correctional Center ("Dixon") (Doc. 12, pp. 4, 6).  He notes that the above series of events directly resulted from an October 2010 incident where the Pinckneyville Law Library publicly posted information on Plaintiff's criminal case and his father's criminal case, which incited inmates and staff to target him for violence and extortion.

Plaintiff next turns to a grievance he wrote on February 13, 2013, (Grievance # 2-174-13) regarding retaliation for a prior lawsuit he brought in 2012 against Pinckneyville officials (Doc. 12, pp. 7-9).  Defendant Fritts discussed with Plaintiff the basis for his grievance, which involved Plaintiff's fears for his life, prison staff abusing their authority, and contraband found in cells (Plaintiff includes no specific on these matters).  Defendant Fritts called Internal Affairs and the Health Care Unit to confirm Plaintiff's complaints.  She called in C/O Bryant, who responded that he "F***ed up" (Doc. 12, p. 7).  Defendant Fritts then submitted Plaintiff for a transfer to Dixon, and promised she would get him there.  However, the transfer was denied on April 5,

2013.  Plaintiff also references another lawsuit, *Malone v. Goetting*, Case No. 13-cv-38 (S.D. Ill.), and notes that the defendant(s) in that case (Goettings) controlled the Clinical Services Department and Records Office, suggesting that those defendants had a role in the denial of his transfer (Doc. 12, pp. 8-9).

Describing still another grievance of March 27, 2013, Plaintiff states he was given a job in the laundry "to ease the sting of not getting Plaintiff out" of Pinckneyville (Doc. 12, p. 9). The inmate (Hernandez) who had previously threatened Plaintiff walked into the laundry while Plaintiff was working there.  Hernandez and several other Latino inmates went into the supervisor's office, where they began speaking in Spanish and pointing at Plaintiff.  On his way out, Hernandez told Plaintiff that the other inmates knew Plaintiff was a snitch, and he would not be working there long.  Soon after this, Plaintiff's co-worker inmates began threatening him, and a group of officers then targeted Plaintiff for shakedowns (Doc. 12, pp. 10-11).  For several days in a row, Plaintiff was told not to report to work and his cell was searched repeatedly.  Officers Bryant, Ebbers, Belford, and Moyett taunted Plaintiff and falsely announced he was fired from his job for stealing.  Plaintiff complained to Defendant Fritts and Counselor Hubbard about these incidents and his concern that his cellmates were threatening to set him up to be removed from the cell and fired from the laundry job (Doc. 12, p. 11).  He believes that he was treated in this manner by the officers in retaliation for his lawsuits (Doc. 12, pp. 12-13).

On May 13, 2013, Plaintiff was sent to segregation based on "false accusations, do [sic] to this Administrations exercising retaliation" (Doc. 12, p. 13).  He had previously spoken to Counselor Hubbard about his fears that his cellmates were trying to set him up and plant contraband in his area of the cell.  The move to segregation came after C/O Bowerman claimed to have found unauthorized medication in Plaintiff's cell (Doc. 12, p. 15).  Plaintiff      lists      18

individuals,[1] including Defendant Fritts, whom he alleges were involved in the violations of his rights that were triggered by the Law Library's posting of his and his father's criminal cases (Doc. 12, pp. 15-16).  He then references another May 13, 2013, grievance over his refusal to sign a property sheet after he was moved to segregation (Doc. 12, p. 16).  He requests relief, specifically the continuation of his medications and "protection from foul play" (Doc. 12, p. 17).

On August 1, 2013, Plaintiff had been transferred to Dixon on a court writ, and refused to return to Pinckneyville.  He was forced to return there and was placed in segregation when he got back (Doc. 12, p. 18).

Plaintiff filed another grievance on January 21, 2014, complaining about C/O Bowerman, who verbally harassed him, shook down his cell, and threw away his personal property (Doc. 12, pp. 18-19).  He requests reimbursement for the destroyed items.

Finally, Plaintiff again references the February 2013 transfer request prepared by Defendant Fritts (Doc. 12, p. 19).  He includes copies of a memorandum from Defendant Fritts, as well as several related documents explaining the denial of numerous transfer requests (Doc. 12, pp. 22-25).

### Merits Review Pursuant to 28 U.S.C. § 1915A

Although the Motion at Doc. 12 includes the correct case caption, it otherwise does not conform to the Court's instructions to Plaintiff on what must be included in (and omitted from) his amended complaint.  The document does not contain any factual allegations to support the claims in Count 1 against Defendant Fritts, which specified that Defendant Fritts took retaliatory actions against Plaintiff on January 12, 2014, or February 13, *2014*.

---

[1] These individuals are:  IA Lt. Bradley, IA Lind, IA Furlow, IA James, C/O Bryant, C/O Bowerman, C/O Parker, Lt. Snoka, Defendant Counselor Fritts, Counselor Hubbard, A/W Wilson, A/W Edwards, Sgt. Moyatt, Supervisor Inst. Laundry, IM Patterson, IM Cunningham, IM Bergman, and Lt. Williams (Doc. 12, pp. 11-12).

Even if the Court were to assume that Plaintiff meant to base some of his claims in Count 1 on the *2013* events he describes in Doc. 12, none of the allegations in this document support the theory that Defendant Fritts retaliated against Plaintiff on account of his litigation activity. Instead, he complains about having been targeted for shakedowns and other adverse actions by other officers.  Around February 13, 2013, Plaintiff complained to Defendant Fritts about those incidents, and she attempted to get Plaintiff transferred to another institution.  Her efforts failed. There is no indication that Defendant Fritts did anything to prevent Plaintiff's transfer.  Plaintiff sets forth no facts to suggest that Defendant Fritts retaliated against him in any way in connection with this series of events.

With reference to Defendant Fritts' alleged retaliation on January 12, 2014, Plaintiff provides no factual support.  Doc. 12 includes a description of a grievance Plaintiff wrote on January *21*, 2014, complaining about the cell shakedown by C/O Bowerman and his destruction of Plaintiff's property.  Plaintiff does not mention Defendant Fritts in connection with these allegations.

The final portion of the retaliation claim in Count 1 referenced a May 13, 2014, incident where unidentified defendants planted contraband in Plaintiff's cell.  Doc. 12 describes events surrounding Plaintiff's placement in segregation on May 13, *2013*, after C/O Bowerman shook down the cell and claimed to have found prescription medication next to Plaintiff's television (Doc. 12, p. 15).  Earlier, Plaintiff's cellmates had threatened to set him up to be removed from the cell.  Plaintiff accuses Defendant Fritts and numerous other officials of being involved in those events.  However, he fails to describe any conduct on the part of Defendant Fritts or the other individuals that would support a retaliation claim against them.  C/O Bowerman is the only person who is alleged to have been directly involved in finding the contraband which led to

Plaintiff's confinement in segregation.   However, Plaintiff's narrative indicates that the cellmates, not C/O Bowerman, were responsible for planting that contraband item.   Even if Plaintiff's statements are construed to suggest that C/O Bowerman planted the contraband, Plaintiff claims that he was targeted because of the Law Library's posting of his cases back in 2010 (Doc. 12, p. 15).   Plaintiff does not claim that the publication by the library of his criminal history involved any conduct on his part that was protected by the First Amendment.   Further, he does not allege any connection between C/O Bowerman's search of his cell and any protected activity on his part, such as filing lawsuits or grievances.

In order to plead a retaliation claim, a plaintiff must identify the reasons for the retaliation, as well as "the act or acts claimed to have constituted retaliation," so as to put those charged with the retaliation on notice of the claim(s).   *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).   The inmate must have engaged in some protected First Amendment activity (for example, filing a grievance or otherwise complaining about conditions of confinement), experienced an adverse action that would likely deter such protected activity in the future, and must allege that the protected activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action.   *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009).

In the motion at Doc. 12, Plaintiff has failed to include factual allegations that would support a retaliation claim against Defendant Fritts, C/O Bowerman, or against any other individual in connection with the incidents that occurred on or about January 12 or 21, 2014; February 13 (in either 2013 or 2014); or the May 13, 2013 (or 2014) incident.   If this document is to be construed as the First Amended Complaint, it thus fails to state a claim upon which relief may be granted with respect to the claim designated as Count 1.

Furthermore, Doc. 12 contains unrelated claims and allegations that have nothing to do

with Count 1 – namely, the September 29, 2011, grievance over his cellmate's threats and assault; the March 27, 2013, grievance over the laundry job; and the August 1, 2013, temporary transfer to Dixon.  Plaintiff was instructed that the First Amended Complaint must be limited to allegations in support of Count 1 only, and failure to conform his amended pleading to the Court's instructions would result in the document being stricken.  Finally, Plaintiff failed to sign the document in accordance with the requirements of Federal Rule of Civil Procedure 11.  His signature appears only on the certificate of service (Doc. 12, p. 26).

Plaintiff has failed to file a proper amended complaint within the time frame allowed by the Court.  The motion at Doc. 12, if it is construed as an amended complaint, does not conform to the Court's instruction that the amended complaint must contain only allegations that support the claim in Count 1.  Nor does it comply with Rule 11 of the Federal Rules of Civil Procedure. Even if the Court were to overlook those deficiencies, the factual allegations in Doc. 12 which are connected to the claim in Count 1 fail to state a retaliation claim upon which relief may be granted.  Accordingly, this action is subject to dismissal.

**IT IS THEREFORE ORDERED** that this action is **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted.  The Motion to File First Amended Complaint (Doc. 12) is **DENIED**.

Plaintiff is **ADVISED** that this dismissal shall count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).  Because two of Plaintiff's previously-filed lawsuits[2] have also been dismissed pursuant to § 1915A for failure to state a claim upon which relief may be granted, the dismissal of this case gives Plaintiff his third "strike."  Accordingly, if

---

[2] *Malone v. Ardis*, No. 13-cv-1543 (C.D. Ill., filed Nov. 18, 2013) (strike 1, dismissed Dec. 3, 2013, for failure to state a claim upon which relief may be granted); *Plaintiff v. City of Peoria*, No. 13-cv-1559 (C.D. Ill., filed Nov. 25, 2013) (strike 2, dismissed Feb. 20, 2014, for failure to state a claim upon which relief may be granted).

Plaintiff seeks to file any future civil action *while he is a prisoner*, he will no longer be eligible to pay the filing fee in installments using the *in forma pauperis* provisions of § 1915(a) and (b), unless he can establish that he is "under imminent danger of serious physical injury."  28 U.S.C. § 1915(g).  If Plaintiff cannot make the necessary showing of imminent physical danger, he shall be required to pre-pay the full filing fee for any future lawsuit he may file while incarcerated, or face dismissal of the suit.

Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable.  *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this dismissal, his notice of appeal must be filed with this Court within thirty days of the entry of judgment.  FED. R. APP. P. 4(a)(1)(A).  A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C).  If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal.  *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).  Moreover, because Plaintiff has "struck out" and has not shown that he is in imminent danger of serious physical injury in connection with this action, this Court will not grant him permission to proceed *in forma pauperis* on appeal.  Finally, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike."  A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline.  FED. R. APP. P. 4(a)(4).  A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: November 7, 2016**

<u>s/ STACI M. YANDLE</u>
United States District Judge